**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| NAVIGATORS SPECIALTY INSURANCE COMPANY, | : | |
| | : | |
| | : | **OPINION** |
| Plaintiff, | : | |
| | : | Civ. No. 09-4317 (WHW) |
| v. | : | |
| | : | |
| SCARINCI & HOLLENBECK, LLC, ET AL. | : | |
| | : | |
| Defendants. | : | |
| | : | |

**Walls, Senior District Judge**

Defendants Scarinci Hollenbeck, LLC, Joel Glucksman, and Frank Kapusinksi ("Defendants") move for summary judgment against Plaintiff Navigators Specialty Insurance Company ("Plaintiff"). Plaintiff opposes Defendants' motion and cross-moves for summary judgment. Pursuant to Rule 78 of the Federal Rules of Civil Procedure, the motions are decided without oral argument. Defendants' motion is denied. Plaintiff's motion is granted.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Navigators is an insurance company headquartered in New York. (Compl. ¶ 2.) Defendant Scarinci Hollenbeck, LLC ("Scarinci Hollenbeck") is a law firm based in New Jersey; Defendants Joel Glucksman and Frank Kapusinksi are attorneys employed by Scarinci Hollenbeck. (Compl. ¶¶ 3-5.) Plaintiff issued a Primary Lawyers Professional Liability Insurance Policy (the "policy") to Scarinci Hollenbeck for the period from June 14, 2008 to June

NOT FOR PUBLICATION

14, 2009.  (Compl. ¶¶ 1, 8, Ex. 1 at 1.)   Under the policy, Plaintiff agreed to pay claims arising

out of acts, errors, or omissions of Scarinci Hollenbeck and attorneys employed by Scarinci

Hollenbeck in rendering or failing to render professional services during the policy period.

(Compl. ¶ 32, Ex. 1 at 3.)

In September 2008, Bel Air Holdings LLC and 201 Kennedy Consultants LLC

(collectively, the "Bel Air plaintiffs") filed an action in New Jersey Superior Court against

Defendants and other parties.  (Compl. ¶ 17.)  There, the Bel Air plaintiffs alleged that

Defendants represented First Bank and Trust Company of Illinois ("First Bank") and Heritage

Estates LLC ("Heritage") in connection with a foreclosure action on a certain property owned by

the Bel Air plaintiffs (Compl. ¶ 17,  Ex. 2 ¶¶ 16, 29), and that, in the course of this

representation, Defendants "materially assisted in their clients' scheme to steal plaintiffs'

property and rental income from the property, to conceal their clients' negligence in seriously

damaging the property, and to prevent plaintiffs from redeeming the mortgage and retaining

ownership in the property."  (Compl., Ex. 2 ¶ 7.)  Specifically, the Bel Air plaintiffs alleged that

the Defendants withheld material information from the foreclosure court (Compl. ¶ 20, Ex. 2 ¶¶

38-40, 50-54), and filed court papers that contained false claims and falsified accounting

information regarding damage to the subject property (Compl. ¶ 22, Ex. 2 ¶¶ 70-72).

Pursuant to the policy, Plaintiff provided a defense to Defendants in the underlying state

court action, subject to a full reservation of rights.  (Compl. ¶ 30.)  On August 24, 2009, while

Plaintiff was continuing to defend Defendants in that action, Plaintiff filed a Complaint in this

Court seeking a declaratory judgment that the policy does not provide coverage to Defendants for

-2-

**NOT FOR PUBLICATION**

the underlying action.  (Compl. ¶ 1.)  Defendants filed a motion to dismiss the Complaint for

failure to state a claim upon which relief can be granted, and Plaintiff opposed the motion.  On

December 10, 2009, Defendants submitted a reply in further support of the motion to dismiss, in

which they set forth additional facts regarding a recent settlement agreement reached in the

underlying action.  In light of these additional facts, Defendants requested that the Court convert

their motion to dismiss into a motion for summary judgment.  See Fed. R. Civ. P. 12(d).  The

Court granted Defendants' request and converted the motion to dismiss into a motion for

summary judgment, and directed the parties to submit additional materials pertinent to the

motion for summary judgment.  See Fed. R. Civ. P. 56(c)(1).  On January 27, 2010, Plaintiff

opposed Defendants' motion and cross-moved for summary judgment.  The parties' motions for

summary judgment are now before the Court.

**STANDARD OF REVIEW**

Summary judgment is appropriate where the moving party establishes that "there is no

genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law."

Fed. R. Civ. P. 56(c)(2).  A factual dispute between the parties will not defeat a motion for

summary judgment unless it is both genuine and material.  See Scott v. Harris, 550 U.S. 372, 380

(2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  A factual dispute is

genuine if a reasonable jury could return a verdict for the non-movant and it is material if, under

the substantive law, it would affect the outcome of the suit.  See Anderson, 477 U.S. at 248.  The

moving party must show that the non-moving part has failed to "set forth," by affidavits or

**NOT FOR PUBLICATION**

otherwise, "specific facts showing that there is a genuine issue for trial." See Beard v. Banks,

548 U.S. 521, 529 (2006) (citing Fed. R. Civ. P. 56(e)).

Once the moving party has carried its burden under Rule 56, "its opponent must do more

than simply show that there is some metaphysical doubt as to the material facts" in question.

Scott, 550 U.S. at 380 (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,

586-87 (1986)). To survive a motion for summary judgment, a non-movant must present more

than a mere "scintilla of evidence" in his favor. Woloszyn v. County of Lawrence, 396 F.3d 314,

319 (3d Cir. 2005). The opposing party must set forth specific facts showing a genuine issue for

trial. Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001). At the summary judgment stage,

the court's function is not to weigh the evidence and determine the truth of the matter, but rather

to determine whether there is a genuine issue of fact for trial. See Anderson, 477 U.S. at 249.

**DISCUSSION**

**I. Justiciability**

In their original brief in support of their motion to dismiss, Defendants argued that,

because the state court action had not yet been finally adjudicated, Plaintiff's declaratory

judgment action in this Court did not present a justiciable case or controversy under Article III of

the Constitution. (Def. Br. 11-12.) Defendants stated that "[t]he bottom line is, until the

underlying action is resolved, Navigators is obligated to continue providing a defense to Scarinci

Hollenbeck, Glucksman, and Kapusinski" (Def. Br. 14), and asserted that Plaintiff's action in this

Court was unripe for adjudication as long as the underlying action was still in progress (Def. Br.

11-15)

NOT FOR PUBLICATION

Yet, in their reply brief in further support of their motion to dismiss – which, at Defendants' request, was converted to a motion for summary judgment – Defendants argue that the matter before this Court is not justiciable because it is now moot in light of the settlement reached in the underlying action.  (Def. Reply 2-4, 5-6.).  Defendants state that, because the underlying action has been resolved, "not only is the issue of Navigators' continuing defense obligations moot, but the issue of whether Navigators will ever be obligated to indemnify Defendants for any of the above noted dismissed claims is similarly mooted by the settlement." (Def. Reply 3.)

Defendants' position is that Plaintiff's action in this Court has never been justiciable.  As noted by Plaintiff in its cross-motion for summary judgment, Defendants essentially argue that the action progressed from unripeness directly to mootness, leaving no window in which the case would be ripe for adjudication.  (Pl. Br. 2-3.)  The Court disagrees.  Plaintiff's present action in this Court is neither unripe nor moot.

Under Article III of the United States Constitution, the exercise of judicial power depends upon the existence of a case or controversy.  Toll Bros., Inc. v. Twp. of Readington, 555 F.3d 131, 137 (3d Cir. 2009); Rendell v. Rumsfeld, 484 F.3d 236, 240 (3d Cir. 2007); U.S. Const. art. III, § 2.  The purpose of the case-or-controversy requirement is to ensure that the judicial power does not "extend [] to every question under the constitution," and that courts stay confined to their proper role – which is to "decid[e] on the rights of individuals."  Toll Bros., 555 F.3d at 137 (citing DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 341 (2006); Marbury v. Madison, 5 U.S. (1 Cranch) 137, 170 (1803)).  In other words, "federal courts are without power to decide questions

NOT FOR PUBLICATION

that cannot affect the rights of the litigants in the case before them." <u>Surrick v. Killion</u>, 449 F.3d 520, 526 (3d Cir. 2006) (citing <u>DeFunis v. Odegaard</u>, 416 U.S. 312, 316 (1974)).

"Courts enforce the case-or-controversy requirement through the several justiciability doctrines that 'cluster about Article III.'" <u>Toll Bros.</u>, 555 F.3d at 137 (quoting <u>Allen v. Wright</u>, 468 U.S. 737, 750 (1984)). These justiciability doctrines include "standing, ripeness, mootness, the political-question doctrine, and the prohibition on advisory opinions." <u>Toll Bros.</u>, 555 F.3d at 137 (citing <u>DaimlerChrysler Corp. v. Cuno</u>, 547 U.S. 332, 352 (2006)). Ripeness and mootness are essentially questions of timing.

*A. Ripeness*

The ripeness doctrine asks whether a party has brought an action prematurely; if so, a court must abstain from deciding the action until the dispute is sufficiently concrete as to present a case or controversy under Article III. <u>Pittsburgh Mack Sales & Serv., Inc. v. Int'l Union of Operating Eng'rs, Local Union No. 66</u>, 580 F.3d 185, 190 (3d Cir. 2009). Ripeness prevents courts from "entangling themselves in abstract disagreements" and rendering opinions that "advis[e] what the law would be on a hypothetical state of facts." <u>Surrick</u>, 449 F.3d at 527 (citations omitted). By abstaining from deciding a case until it is ripe, a court ensures that it will decide only "a real and substantial controversy admitting of specific relief through a decree of a conclusive character." <u>Id.</u> (citing <u>North Carolina v. Rice</u>, 404 U.S. 244, 246 (1971)).

The Third Circuit has noted that "it is difficult to define the contours of the ripeness doctrine with precision;" that this difficulty is particularly pronounced in the context of declaratory judgment actions, as declaratory judgments are, by definition, issued before

**NOT FOR PUBLICATION**

"'accomplished' injury can be established;" and that this "*ex ante* determination of rights exists in some tension with traditional notions of ripeness." Step-Saver Data Sys., Inc. v. Wyse Tech., 912 F.2d 643, 646-47 (3d Cir. 1990); see also Pittsburgh Mack Sales & Serv., Inc., 580 F.3d at 190 ("Ripeness is a matter of degree whose threshold is notoriously hard to pinpoint.  This is especially so in declaratory judgment actions because declaratory judgments are typically sought before a completed injury has occurred.") (internal quotation marks and citations omitted).  Accordingly, the Third Circuit has established a "refined test to determine whether [it] will engage in pre-enforcement review in the context of a declaratory judgment action." Surrick, 449 F.3d at 528.  For an action to be ripe under this test, "(1) the parties must have adverse legal interests; (2) the facts must be sufficiently concrete to allow for a conclusive legal judgment, and (3) the judgment must be useful to the parties." Id. (citing Step-Saver Data Sys., Inc., 912 F.2d at 647).

Plaintiff's case is not unripe.  Plaintiff presumably expended a significant sum of money in defending Defendants in the underlying action.  Plaintiff also paid a significant sum towards the settlement in the underlying action, as it paid the amount of the settlement ($450,000) less Defendants' deductible under the policy ($150,000).  (Def. Reply 2.)  Even though Plaintiff provided a defense to Defendants in the state action, and even though the state action is now concluded, the costs of the defense and indemnification are in dispute.  Because of the costs incurred by Plaintiff, and because of its contention that it was not obligated under the policy to incur those costs, this case satisfies each prong of the Third Circuit's test for ripeness in the

NOT FOR PUBLICATION

context of declaratory judgment actions.  See Surrick, 449 F.3d at 528; Step-Saver Data Sys., Inc.

at 647.

First, Plaintiff and Defendants have adverse legal interests.  Plaintiff seeks a declaratory

judgment of no coverage under the policy, which would allow Plaintiff to recover the disputed

costs from Defendants, while Defendants contend that they were entitled to coverage under the

policy and seek to prevent Plaintiff from recovering these costs.  Second, the facts are sufficiently

concrete to allow for a conclusive legal judgment; those that will form the basis of this Court's

judgment – facts concerning Plaintiff's alleged responsibility to provide defense and indemnity

coverage to Defendants under the terms of the policy – have already been developed at length in

the state action and in the voluminous briefing papers that the parties have submitted to this

Court.  Third, a judgment from this Court will be useful to the parties, as it will determine the

remaining monetary obligations, if any, between the parties.

This Court's finding of ripeness is supported by the Third Circuit's specific holding that

"declaratory suits to determine the scope of insurance coverage brought independently of the

underlying claims" – even those brought before the conclusion of an underlying action – are ripe

for adjudication.  ACandS, Inc. v. Aetna Cas. and Sur. Co., 666 F.2d 819, 822-3 (3d Cir. 1981).

In an oft-quoted statement, the AcandS court noted that "[i]t would turn the reality of the claims

adjustment process on its head to hinge justiciability of an insurance agreement on the maturation

of a suit to a judgment," and concluded that "[t]his court and others have by now well established

that a disagreement on the insurers' obligations to defend is a 'case or controversy.'"  AcandS,

666 F.2d at 823.  Plaintiff's action is clearly ripe for adjudication.

-8-

**NOT FOR PUBLICATION**

*B. Mootness*

In contrast to the ripeness doctrine, which asks whether it is too early for a court to decide

a case, the mootness doctrine asks whether it is too late for a court to provide meaningful relief to

the parties.  "The doctrine of mootness requires that 'an actual controversy must be extant at all

stages of review, not merely at the time the complaint is filed.'"  Brown v. Phila. Hous. Auth.,

350 F.3d 338, 343 (3d Cir. 2003) (citation omitted).  "The central question of all mootness

problems is whether changes in circumstances that prevailed at the beginning of the litigation

have forestalled any occasion for meaningful relief."  Rendell, 484 F.2d at 240 (citation omitted).

Accordingly, a case is moot when, due to changes in the circumstances of the case, "(1) the

issues presented are no longer live, or (2) the parties lack a cognizable interest in the outcome."

Brown, 350 F.3d at 343 (citation omitted).

The Third Circuit has held that "[a] case is saved from mootness if a viable claim for

damages exists."  Nat'l Iranian Oil Co. v. Mapco Int'l, Inc., 983 F.2d 485, 490 (3d Cir. 1992)

(citation omitted).  "Even where the amount of damages at issue is minute, a case is not moot so

long as the parties have a concrete interest, however small, in the outcome of a litigation."  Id.

(citation omitted).  The Third Circuit has also noted that "[t]he burden of demonstrating

mootness is a heavy one."  Surrick, 449 F.3d at 526 (citation omitted).

Plaintiff's case is not moot.  Plaintiff seeks a declaratory judgment that it was not

obligated under the policy to defend or indemnify Defendants in the underlying action; if

Plaintiff is successful, it "would be entitled to recover from the. . . Defendants the amounts it

paid to defend them against, and settle, the claims of the Bel Air plaintiffs" in the underlying

NOT FOR PUBLICATION

action.  (Pl. Br. 20.)  Because Plaintiff has a viable claim for damages, and because a declaratory

judgment from this Court would determine the monetary obligations of the parties, this case is

not moot.  Nat'l Iranian Oil Co., 983 F.2d at 489.  Indeed, as Plaintiff notes, "although 'there is

no controversy with respect to Navigators' *current* obligation to defend its insureds in the

underlying Litigation', there most certainly is a controversy with respect to amounts already

incurred by Navigators in defending the Underlying Action."  (Pl. Br. 21 (citing Def. Reply 6).)

Defendants have not met their heavy burden to demonstrate mootness.  Surrick, 449 F.3d at 526.

## II. Coverage Under the Policy

Plaintiff and Defendants do not dispute the material facts at issue here, as they agree that

they are bound by the policy and that the policy provisions will determine whether Plaintiff was

obligated to defend and indemnify Defendants in the underlying action.  However, they dispute

the meaning of certain terms of the policy and dispute the extent of the resulting coverage under

these terms.  Plaintiff alleges that the claims asserted in the underlying action do not fall within

the scope of the policy's coverage because they did not arise out of the "professional services" of

Defendants.  (Compl. ¶¶ 32-33.)  Plaintiff also alleges that, even if these claims did fall within

the scope of the general coverage provided by the policy, they are specifically excluded from

coverage by the policy's prior knowledge exclusion.  (Compl. ¶¶ 37-42.)  Defendants argue that

Plaintiff's no-coverage allegations are unsupported by the text of the policy.  (Def. Br. 16-20.)

This Court, sitting in diversity, must interpret each of the disputed policy provisions

under New Jersey insurance law to determine their meaning.  See Erie R. Co. v. Tompkins, 304

U.S. 64, 77 (1938).  The Court will grant summary judgment based on its determination of the

NOT FOR PUBLICATION

meaning of the disputed terms under New Jersey law and the resulting coverage afforded by the

policy.  See Wimberly Allison Tong & Goo, Inc. v. Travelers Prop. Cas. Co. of Am., 559 F.

Supp. 2d 504, 510 (D.N.J. 2008) ("Under New Jersey law, '[t]he interpretation of an insurance

contract on undisputed facts is a question for the court to decide as a matter of law and can be the

basis for summary judgment.'").

*A. Professional Services*

(1) The Policy and the Parties' Dispute

Under the policy, Plaintiff agreed to pay claims made against Defendants during the

Period of Insurance.  Specifically, Plaintiff agreed

> to pay on behalf of the Insured damages and claims expenses. . . first made against
> the Insured. . . during the Period of Insurance. . . arising out of any act, error or
> omission of the Insured in rendering or failing to render Professional Services for
> others on behalf of the Named Insured. . . except as excluded or limited by the terms,
> conditions, and exclusions of this policy.

(Compl., Ex. 1 at 3.)  The Period of Insurance was June 14, 2008 to June 14, 2009.  (Id. at 1.)

The Named Insured on the policy is "Scarinci & Hollenbeck, LLC."  (Id. at 1.)  In addition to the

Named Insured, "[a]ny employed lawyer" of the Named Insured is insured under the policy, but

"solely for acts [undertaken] on behalf of the Named Insured."  (Id. at 4.)   Professional services

are defined as services "provided as a lawyer, notary public, title agent, trustee, arbitrator,

mediator, lobbyist, or Fiduciary."  (Id. at 7.)

In its first cause of action, Plaintiff seeks a declaratory judgment that there is no coverage

under the policy because the acts that gave rise to the underlying action do not qualify as

"professional services" rendered by Defendants.  (Compl. ¶¶ 32-35.)  In their motion to dismiss,

-11-

NOT FOR PUBLICATION

Defendants argued that, because they "performed legal services on behalf of First Bank and Trust Company of Illinois and later Heritage Estates and represented them in connection with the subject transaction and in the underlying action," and because "[t]he claims asserted against the Defendants in the underlying action *arise out of the rendering of those Professional Services*," Plaintiff's first cause of action must be dismissed for failure to state a claim.  (Def. Br. 16-17 (emphasis in original).)  Plaintiff countered that, because the underlying action was brought by non-clients of the Defendants – individuals for whom Defendants did not provide any professional services – its first cause of action stated a plausible claim for relief and should, at the very least, survive a motion to dismiss.  (Pl. Opp'n 17-18.)

In their summary judgment motion, Defendants respond that the policy "contains no restriction limiting the scope of 'Professional Services' to those associated with claims *brought by Clients*.  Simply stated, the Navigators policy covers claims arising out of 'Professional services provided as a lawyer', regardless of who brings the claim."  (Def. Reply 7.)  Defendants assert that their position is supported by "clearly established New Jersey Law," which "provides that there are circumstances in which an attorney owes a duty and can be held liable to a non-client arising out of the attorney's rendering of legal services."  (Def. Reply 9 (citing Petrillo v. Bachenberg, 139 N.J. 472, 479 (1995)).)  Defendants also note that the Bel Air plaintiffs' alleged breach of fiduciary duty against Defendants in the state action, and that, pursuant to the settlement agreement, "all claims other than Breach of Fiduciary Duty have been dismissed with prejudice and without payment to Bel Air et al."  (Def. Reply 8.)  Defendants assert that Bel Air's filing of an Affidavit of Merit in support of its breach of fiduciary duty claim "put the proverbial

NOT FOR PUBLICATION

'final nail in the coffin' of Plaintiff's position" because "[u]nder New Jersey law, an 'Affidavit of Merit' is required solely in *professional liability* and negligence actions against licensed professionals.  N.J.S.A. 2A:53A-27."  (Def. Reply 8-9 (emphasis in original).)  Based on these facts, Defendants conclude that "[i]f such a fiduciary duty by Defendants to Bel Air existed and was breached (which is denied by all Defendants), that duty as *averred by Bel Air arose out of the Defendants' rendering of Professional Services.*"  (Def. Reply 8 (emphasis in original).)

     In its cross-motion for summary judgment, Plaintiff argues that the fraudulent conduct alleged against Defendants in the state action simply does not qualify as "professional services provided as a lawyer."  (Pl. Br. 24-26.)  Plaintiff also counters that Defendants' assertion regarding Bel Air's breach of fiduciary duty allegation is unavailing, as the totality of the allegations contained in the underlying state complaint – not simply those that remain after settlement has been reached – must be examined to determine whether there is coverage under the policy.  (Pl. Br. 25.)  Finally, Plaintiff notes that the Affidavit of Merit, though required in professional liability cases, is irrelevant to the question of coverage, as coverage is determined by comparing the allegations in the underlying action with the language of the insurance policy.  (Pl. Br. 26 (citing <u>Wimberly Allison</u>, 559 F. Supp. 2d at 510).)  Plaintiff asserts that, in comparing these allegations with the policy language, it is clear that the allegations do not fall within the scope of the policy's coverage and do not create a duty to defend or indemnify because they do not concern "professional services" rendered by Defendants.

     (2) Relevant New Jersey Law

**NOT FOR PUBLICATION**

As a general matter, New Jersey law requires that, "[w]hen interpreting an insurance policy, courts. . . give the policy's words their plain, ordinary meaning.  If the policy language is clear, the policy should be interpreted as written. If the policy is ambiguous, the policy will be construed in favor of the insured."  Nav-Its, Inc. v. Selective Ins. Co. of Am., 183 N.J. 110, 118 (2005) (quotation marks and citations omitted).  This solicitude towards the insured is a result of the New Jersey Supreme Court's holding that "while insurance policies are contractual in nature, they are not ordinary contracts but contracts of adhesion between parties who are not equally situated." Doto v. Russo, 140 N.J. 544, 555 (1995) (citation omitted).  For this reason, "courts must assume a particularly vigilant role in ensuring their conformity to public policy and principles of fairness."  Nav-Its Inc., 183 N.J. at 118 (citation omitted).

In addition, consistent with their role in upholding public policy and fairness, New Jersey courts "'endeavor [] to interpret insurance contracts to accord with the objectively reasonable expectations of the insured.'"  Id. (citation omitted).  Moreover, the New Jersey Supreme Court has "recognized the importance of construing contracts of insurance to reflect the reasonable expectations of the insured in the face of ambiguous language and phrasing, and in exceptional circumstances, when the literal meaning of the policy is plain."  Doto, 140 N.J. at 556 (citation omitted).  "Nonetheless, courts 'should not write for the insured a better policy of insurance than the one purchased.'"  Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175 (1992) (citations omitted).

With respect to the duty of an insurer to defend its insured, the New Jersey Supreme Court has held:

-14-

**NOT FOR PUBLICATION**

> The duty to defend comes into being when the complaint states a claim constituting a risk insured against.  Whether an insurer has a duty to defend is determined by comparing the allegations in the complaint with the language of the policy.  When the two correspond, the duty to defend arises, irrespective of the claim's actual merit.  If the complaint is ambiguous, doubts should be resolved in favor of the insured and thus in favor of coverage.

Voorhees, 128 N.J. at 173-74 (quotation marks and citations omitted).  The New Jersey Supreme Court has also clarified that the duty to defend arises even when "the claims are poorly developed and almost sure to fail," and that the duty is "not abrogated by the fact that the cause of action. . . is groundless, false or fraudulent."  Id. at 174 (citations omitted).  "Liability of the insured. . . is not the criterion; it is the allegation in the complaint of a cause of action which, if sustained, will impose a liability covered by the policy."  Id. (citation omitted).

Finally, with respect to the meaning of "professional services," the New Jersey Supreme Court's analysis in Princeton Insurance Co. v. Chunmuang, 151 N.J. 80 (1997) is instructive.  The Chunmuang court considered whether a physician's sexual assault of his patient during an examination would be considered to have occurred within the course of the physician's rendering of professional services and would therefore be covered by his medical malpractice insurance policy.  In so doing, it examined numerous precedents from factually similar cases both within and without New Jersey.  As example, the court looked to Marx v. Hartford Accident & Indemnity Co., 183 Neb. 12 (1968), which found:

> [A] 'professional' act of service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual. . . . In determining whether a particular act is of a professional nature or a 'professional service' we must look not to the title or character of the party performing the act, but to the act itself.

-15-

NOT FOR PUBLICATION

Chunmuang, 151 N.J. at 89 (quoting Marx, 183 Neb. 12).  The Chunmuang court also looked to

Records v. Aetna Life & Casualty Insurance, 294 N.J. Super. 463 (App. Div. 1996), another

physician assault case in which the Appellate Division interpreted a policy that provided

coverage for "claim[s] 'arising out of' the rendering of professional services."  Chunmuang, 151

N.J. at 93 (quoting Records, 294 N.J. Super. at 467).  The Chunmuang court stated: "The

Records approach can be termed a 'substantial nexus' test, and emphasizes 'the existence of a

substantial nexus between the subject matter of the [policy holder's] discussion with [the injured

party] and his professional practice rather than [the policy holder's] conduct during that

discussion.'"  Chunmuang, 151 N.J. at 93-94 (quoting Records).  The Chunmuang court

ultimately adopted the reasoning of the Records court, stating: "We agree with the Records court

that the important question is simply whether a substantial nexus exists between the context in

which the acts complained of occurred and the professional services sought.'"  Chunmuang, 151

N.J. at 97.

     Applying the Records test, the Chunmuang court found that an alleged sexual assault by

a physician upon his patient was covered by the physician's malpractice policy because it was an

injury "caused by a 'medical incident' arising out of [the physician's] supplying or failure to

supply professional services."  Chunmuang, 151 N.J. at 97-98.  The Chunmuang court reasoned

that, because the assault occurred in the course of what the physician "represented to be a

medical examination" and was "possible only because [the patient] entrusted herself to the

physician's care for the purpose of receiving diagnosis and treatment for a medical problem," the

**NOT FOR PUBLICATION**

assault was a "medical incident" that arose out of supplying or failing to supply professional services.  <u>Id.</u>

       (3) Interpretation of the Policy under New Jersey Law

       Based on the duty to defend as articulated by the New Jersey Supreme Court, Plaintiff is correct that this Court does not look to any particular cause of action (such as breach of fiduciary duty) in the underlying action or to the Affidavit of Merit to determine coverage under the policy. Rather, the Court looks to the allegations as a whole: under New Jersey law, "if the factual allegations in the underlying complaint fall within the scope of the policy's coverage, then 'the duty to defend arises, irrespective of the claim's actual merit.'"  <u>Wimberly Allison</u>, 559 F. Supp. 2d at 510 (quoting <u>Voorhees</u>, 128 N.J. at 173).  In the state court complaint, the Bel Air plaintiffs allege that Defendants willfully and materially assisted their clients in a scheme to steal the Bel Air plaintiffs's property and income.  (Compl. ¶¶ 20-23, Ex. 1 ¶¶ 7, 155.)  If these factual allegations fall within the scope of the policy's coverage, Plaintiff is obligated to defend and indemnify Defendants in the underlying action.  <u>Wimberly Allison</u>, 559 F. Supp. 2d at 510.

       The scope of the policy's coverage is determined by the "plain, ordinary meaning" of the policy language.  <u>Nav-Its, Inc.</u>, 183 N.J. at 118.  This policy language states that Plaintiff is obligated to cover claims "arising out of any act, error or omission of the Insured in rendering or failing to render Professional Services for others on behalf of the Named Insured."  (Compl., Ex. 1 at 3.)  Plaintiff asserts that the factual allegations in the underlying complaint do not fall within the scope of this language because the claims in the underlying action were brought by non-

**NOT FOR PUBLICATION**

clients of the Defendants, and because fraudulent conduct does not qualify as "professional services" rendered by a lawyer.

Plaintiff's first contention is that claims brought by non-clients are not covered by the policy. However, the policy language is clear, and its plain, ordinary meaning does not limit the class of persons who may bring claims. The policy language is that Plaintiff is obligated to cover claims "arising out of *any* act, error or omission of the Insured in rendering or failing to render Professional Services to others" (Compl., Ex. 1 at 3 (emphasis added)); it does not require that those "others," who were the direct recipients of professional services, be the parties who bring the claims. The Court finds that Plaintiff is obligated to cover claims brought by non-clients, such as the Bel Air plaintiffs, that arise out of the acts, errors, or omissions of the Defendants in rendering or failing to render professional services.

Plaintiff's second contention is that the fraudulent conduct alleged in the underlying complaint does not qualify as "professional services" rendered by a lawyer. Even if it is obligated to cover claims brought by non-clients of the Defendants, Plaintiff argues that it is not obligated to cover the claims contained in the state court complaint because they do not arise out of acts, errors, or omissions of the Defendants in rendering or failing to render *professional services*. In determining whether particular acts constitute professional services, the Third Circuit has held that "the important question is simply whether a substantial nexus exists between the context in which the acts complained of occurred and the professional services sought." Chunmuang, 151 N.J. at 97. The acts complained of – withholding material information from a court and submitting false statements to a court – are acts that allegedly

-18-

**NOT FOR PUBLICATION**

occurred in the context of Defendants' representation of First Bank and Heritage in a foreclosure

action, and there is clearly a substantial nexus between such representation and the professional

services that First Bank and Heritage sought from Defendants.   Had Defendants not been acting

as attorneys for First Bank and Heritage, they would not have been able to commit the alleged

fraudulent acts, as these acts allegedly occurred in the context of rendering legal services.   While

Plaintiff may be correct that the definition of legal services typically does not (and should not)

include the commission of fraud, the acts alleged in the underlying complaint qualify as

"professional services" because they satisfy the substantial nexus test set out by the Third Circuit.

Because the claims in the underlying action arise out of an "act, error or omission of the Insured

in rendering or failing to render Professional Services," they are covered by the policy.

*B. Exclusion IV(h)*

> (1) The Policy and the Parties' Dispute

> Under the policy, certain damages and claims are expenses excluded from coverage.

Clause IV of the policy, entitled "Exclusions," contains sub-section (h), which reads:

> The coverage under this insurance does not apply to Damages or Claims Expenses
> incurred with respect to any Claim arising out of any acts, errors, or omissions which
> took place prior to the inception date of the first policy issued and continuously
> renewed, if any Insured on the effective date knew or could have reasonably foreseen
> that such acts, errors, or omissions might be expected to be the basis of a Claim.

(Compl., Ex. 1 at 6.)  Plaintiff and Defendants disagree as to the applicability of this prior

knowledge exclusion.  Plaintiff argues that the allegations in the underlying action arise from acts

that Defendants purportedly committed before the June 14, 2008 commencement of coverage

under the policy (Compl. ¶¶ 38-42), and that Defendants "either knew or could have reasonably

NOT FOR PUBLICATION

foreseen that such acts, errors or omissions as alleged in the underlying action might be expected to be a basis of a Claim." (Compl. ¶ 42.) Plaintiff seeks a declaratory judgment holding that, because of the reasonable foreseeability of the claims, Exclusion IV(h) precludes coverage.

Defendants initially moved to dismiss this cause of action, arguing that "there is no *fact* alleged in the Complaint filed by Plaintiff which supports its claim" that Defendants knew or could have reasonably foreseen that "their acts, errors or omissions in the representation of their clients [] might reasonably be expected to be the basis of a claim asserted by an adverse non-client." (Def. Br. 19 (emphasis in original).) Plaintiff responded that, under the mixed subjective-objective test established by the Third Circuit, the prior knowledge exclusion applies because Defendants had subjective knowledge of certain occurrences that a reasonable professional in their position would conclude may result in a claim. (Pl. Opp'n 20-21 (citing Coregis Ins. Co. v. Baratta & Fenerty, Ltd., 264 F.3d 302, 306 (3d Cir. 2001).)

In their motion for summary judgment, Defendants again claim that there is no "fact averred. . . wherein it is specifically or even inferentially alleged that *Scarinci Hollenbeck, Glucksman and/or Kapusinski* knew or could have reasonably foreseen that it was *their* acts, errors or omissions" that "might reasonably be expected to be the basis of a claim." (Def. Reply 13 (emphasis in original).) Defendants also assert, as they did in their original motion to dismiss, that, even if "an inference can be drawn that Glucksman knew or could have reasonably foreseen that the alleged acts, errors or omissions in the representation of his clients [] would result in a claim," there are "no allegations that Scarinci Hollenbeck and/or Kapusinski were aware of the potential for a claim." (Def. Reply 13.) "Thus," Defendants contend, "Scarinci Hollenbeck and

-20-

**NOT FOR PUBLICATION**

Kapusinski are entitled to the protection of the Innocent Insured provision contained in the

policy." (Def. Reply 13.) This provision, which appears as Clause VIII of the policy, reads in

relevant part:

> (A) Whenever coverage under this insurance would be excluded, suspended or lost:
> (2) because of noncompliance with Clause XI Notice of Claim or Circumstances That
> May Lead to a Claim, with respect to which any other Insured shall be in default
> solely because of the failure to give such notice or concealment of such failure by one
> or more Insured responsible for the loss or damage otherwise insured hereunder,
> the Company agrees that such insurance as would otherwise be afforded under this
> policy shall cover and be paid with respect to those Insureds who did not personally
> commit or personally participate in committing or personally acquiesce in or remain
> passive after having personal knowledge of (a) one or more of the acts, errors or
> omissions described in any such exclusion.

(Compl., Ex. 1 at 9.)

In support of its cross-motion for summary judgment, Plaintiff notes that, over a year

before the inception of the policy, counsel to the Bel Air plaintiffs gave a deposition in which he

accused the Defendants of fraud and threatened them with a lawsuit. (Pl. Br. 12-14.) Plaintiff

asserts that a reasonable insured in Defendants' position could have reasonably foreseen that

these alleged acts might be expected to be a basis of the claim. (Pl. Br. 31-32.)

Defendants complain that "Navigators' litigation tactic consciously ignores the fact that

Defendants. . . collectively and individually have adamantly and consistently denied both the

factual and legal allegations asserted in the underlying Litigations." (Def. Opp'n 2-3.)

Defendants also argue that Exclusion IV(h) only operates to exclude coverage if, before the

inception of the policy, Defendants subjectively believed that certain acts, errors, or omissions

might be expected to be the basis of a claim, and failed to inform Plaintiff of these acts, errors, or

omissions. (Def. Br. 9-11 (citing Liebling v. Garden State, 337 N.J. Super. 447 (App. Div.

NOT FOR PUBLICATION

2001).)  Finally, Defendants contend that "the policy's exclusion refers to 'acts, errors or

omissions,' but not 'threats,'" and that threats of litigation made by counsel to the Bel Air

plaintiffs – whose "*modus operandi*" was "to t̲hreaten everyone" – cannot trigger the exclusion.

(Def. Opp'n 11 (emphasis in original).)  Exclusion IV(h), Defendants assert, "is premised upon

knowledge of objective acts, errors and/or omissions, *not an awareness of threats*."  (Def. Opp'n

12 (emphasis in original).)

      Plaintiff observes that "the test is not whether the Scarinci Defendants believed that they

committed error," as Defendants' subjective beliefs regarding the propriety of their conduct are

irrelevant to Exclusion IV(h).  (Pl. Reply 14).  Rather, the salient fact with respect to the

Exclusion is that, "prior to the inception of the Navigators Policy[, Defendants] were threatened

with a lawsuit for committing, or helping their clients commit, certain wrongful acts, and a

reasonable person might have expected the lawsuit that was ultimately filed."  (Pl. Reply 15.)

Plaintiff argues that, under the mixed subjective-objective test articulated by the Third Circuit,

the exclusion is applicable.  (Pl. Reply 8-11 (citing Colliers Lanard & Axilbund v. Lloyds of

London, 458 F.3d 231 (3d Cir. 2006)).)  Moreover, with respect to Defendants' argument

regarding "threats" by counsel to the Bel Air plaintiffs, rather than "acts, errors, or omissions"

committed by Defendants, Plaintiff notes that "there is no requirement in the prior knowledge

exclusions that the 'acts, errors or omissions [that] might be expected to be the basis of a Claim'

be the result of the *Insured's* wrongful conduct."  (Pl. Reply 11 (emphasis in original).)  Plaintiff

argues that, even if the acts, errors, or omissions were those of someone other than the insured,

and even if the insured was made aware of them through threats of litigation, they will operate to

**NOT FOR PUBLICATION**

exclude coverage if the insured knew or could have reasonably foreseen that they might be expected to be the basis of a claim against the insured.[1]  (Id. at 12).

(2) Relevant New Jersey Law

The New Jersey Supreme Court has instructed that, "[i]n general, insurance policy exclusions must be narrowly construed; the burden is on the insurer to bring the case within the exclusion." Chunmuang, 151 N.J. at 95 (citation omitted).  However, "exclusions are presumptively valid and will be given effect if 'specific, plain, clear, prominent, and not contrary to public policy.'" Id. (citation omitted).  See also Nav-Its, Inc., 183 N.J. at 119.

In Colliers Lanard & Axilbund v. Lloyds of London, 458 F.3d 231 (3d Cir. 2006), the Third Circuit specifically considered a prior knowledge exclusion.  The insurance policy at issue in Colliers provided coverage for claims made during the policy period, "'provided that the insured had no knowledge of any suit, or any act or error or omission, which might reasonably be expected to result in a claim or suit as of the date of signing the application for this insurance.'" Colliers, 458 F.3d at 233.  The Third Circuit held that, under New Jersey law,

> the plain language of the [prior knowledge] exclusion mandates a subjective test for the first part of the necessary inquiry – whether the insured had knowledge of a suit, act, error, or omission – and an objective test for the second part of the necessary inquiry – whether the suit, act, error, or omission might reasonably be expected to result in a claim or suit.

---

[1] The Court notes that both parties appear to take internally inconsistent positions with respect to limitations implicit in the policy language.  Plaintiff argues that the "professional services" language limits coverage to claims brought by *clients of the insured*, while the language of Exclusion IV(h) does not limit acts, errors, or omissions to *those of the insured*.  Conversely, Defendants argue that the "professional services" language does not limit claims to those brought by *clients of the insured*, while the language of Exclusion IV(h) limits acts, errors, or omissions to *those of the insured*.

NOT FOR PUBLICATION

Colliers, 458 F.3d at 233.  The court found that, "[a]s a matter of law. . . the policy exclusion in

this case is clear and unambiguous."  Colliers, 458 F.3d at 237.  The first part of the exclusion "is

satisfied if *the insured had knowledge* of the relevant suit, act, error or omission," and "depends

on the insured's actual knowledge or subjective awareness, of the relevant suit, act, error or

omission," while the second part of the exclusion "is satisfied if the suit, act, error, or omission

*might reasonably be expected* to result in a claim or suit."  Id. (emphasis in original).  The court

further clarified that the language of the second part "does not require that the insured actually

form such an expectation," as "this part of the exclusion gives rise to an objective test: whether a

reasonable professional in the insured's position might expect a claim or suit to result."  Id.

Finally, the Colliers court held that "applying the exclusion in the present case according to the

mixed subjective-objective standard arising under the exclusion's plain language would not

constitute a violation of New Jersey public policy."  Colliers, 458 F.3d at 240 (citing Sparks v.

St. Paul Ins. Co., 100 N.J. 325 (1985); Zuckerman v. Nat'l Union Fire Ins. Co., 100 N.J. 304

(1985)).

    (3) Interpretation of the Policy Under New Jersey Law

        This Court finds that Exclusion IV(h) is valid because, like the prior knowledge exclusion

at issue in Colliers, it is "specific, plain, clear, prominent, and not contrary to public policy."

Chunmuang, 151 N.J. at 95.  To give effect to the exclusion, this Court uses the mixed

subjective-objective test set out by the Third Circuit in Colliers.  As noted, Defendants rely on

Liebling v. Garden State, 337 N.J. Super. 447 (App. Div. 2001), to support their position that the

application of a prior knowledge exclusion depends upon a subjective rather than an objective

**NOT FOR PUBLICATION**

test, meaning that the exclusion would apply only if the insured subjectively believed that a claim was likely.  (Def. Br. 9-11.)  However, as observed by Plaintiff, the Third Circuit has considered and expressly rejected this position in <u>Colliers</u>, 458 F.3d 231.[2]  (Pl. Reply 8-9.)

In <u>Colliers</u>, the Third Circuit noted that the <u>Liebling</u> court had acknowledged the Third Circuit's first articulation of the mixed subjective-objective test in <u>Selko v. Home Ins. Co.</u>, 139 F.3d 146 (3d Cir. 1998).  The <u>Colliers</u> court observed:

> [T]he <u>Liebling</u> court did not hold, *contra* to <u>Selko</u>, that the language of the exclusion in <u>Liebling</u> was ambiguous.  Nor did the <u>Liebling</u> court hold that the language of the exclusion had a different plain meaning than the one we identified in <u>Selko</u>.  Rather, the <u>Liebling</u> court apparently relied in this passage on the New Jersey doctrine that in exceptional circumstances, even the plain language of an exclusion can be set aside if it is contrary to the objectively reasonable expectations of the insured.

<u>Colliers</u>, 458 F.3d at 238.  After a careful and thorough analysis of <u>Liebling</u> – which did not appear to present any "exceptional circumstances" that would warrant overriding the plain language of an exclusion – as well as an examination of relevant New Jersey Supreme Court decisions, the <u>Colliers</u> court stated:

> As previously noted, however, the New Jersey Superior Court in <u>Liebling</u> held that the mixed subjective-objective test which we adopted in <u>Selko</u> would not meet the reasonable expectations of the insured. Although we acknowledge that the Superior Court's decisions are entitled to substantial weight in our prediction of New Jersey law, its decisions are not controlling, and we conclude that in this instance, we have sufficient indications that the New Jersey Supreme Court would rule otherwise.

<u>Colliers</u>, 458 F.3d at 241.  The <u>Colliers</u> court concluded that "the New Jersey Supreme Court would hold that the mixed subjective-objective test arising from [a] clear and unambiguous

---

[2] Defendants' failure to discuss or even acknowledge <u>Colliers</u> is troubling, as it suggests that Defendants either made disingenuous arguments in the papers they filed with this Court, or else failed to conduct basic legal research on the subsequent treatment of <u>Liebling</u>.

**NOT FOR PUBLICATION**

policy exclusion. . . violates neither New Jersey public policy nor the objectively reasonable

expectations of the insured," and "further predict[ed] that the New Jersey Supreme Court would

hold that this policy exclusion should be applied according to its plain language."  Id. at 243.

   This Court follows the holding of the Third Circuit in Colliers and analyzes Exclusion

IV(h) under the mixed subjective-objective test.  The Third Circuit's analysis in Colliers is

particularly applicable here, as the language of the exclusion at issue in Colliers is similar to the

language of Exclusion IV(h).  The Colliers exclusion only provided coverage for claims if "the

insured had no knowledge of any suit, or any act or error or omission, which might reasonably be

expected to result in a claim or suit as of the date of signing the application for this insurance."

Colliers, 458 F.3d at 233.  Similarly, Exclusion IV(h) excludes coverage for "any Claim arising

out of any acts, errors, or omissions which took place prior to the inception date of the. . . policy

issued. . . if any Insured on the effective date knew or could have reasonably foreseen that such

acts, errors, or omissions might be expected to be the basis of a Claim."  (Compl., Ex. 1 at 6.)

Applying the mixed subjective-objective test to the language of Exclusion IV(h) and the facts of

this case, the Court finds that the exclusion excludes coverage for Defendants with respect to the

underlying action.

   The first part of the exclusion, which refers to "Damages or Claims Expenses incurred

with respect to any Claim arising out of any acts, errors, or omissions which took place prior to

the inception date of the first policy," is the subjective prong, which requires the insured to have

had knowledge of relevant acts, errors, or omissions.  The Court finds that, well before the June

14, 2008 inception date of the policy, Defendants knew of such acts, errors or omissions.  As

**NOT FOR PUBLICATION**

example, the underlying complaint accused Defendants of withholding material information –

namely, a document known as the "Corio report" – from the foreclosure court.  (Compl., Ex. 2 ¶¶

50-54.)  In addition, the underlying complaint accused Defendants of falsifying accounting

information and misrepresenting the nature of certain costs related to the subject property in a

memorandum of law that they submitted to the foreclosure court.  (Compl., Ex. 2 ¶¶ 70-72.)

Although Defendants continuously and vigorously deny the Bel Air plaintiffs' characterizations

of these incidents as wrongful – for instance, they characterize the alleged withholding of the

Corio report as "a discovery dispute between adversaries" that "at most, exposed [them] to

discovery sanction (which were [sic] never imposed.)" (Def. Opp'n 12.) – Defendants'

knowledge of these incidents, rather than their characterization of their culpability in these

incidents, is the salient factor.  Defendants were clearly aware of these incidents because they

were involved in them, and this awareness satisfies the subjective prong of the test.[3]

        The second part of the exclusion, which excludes coverage if "any Insured on the

effective date knew or could have reasonably foreseen that such acts, errors, or omissions might

be expected to be the basis of a Claim," is the objective prong, which asks "whether a reasonable

professional in the insured's position might expect a claim or suit to result."  Colliers, 458 F.3d

at 237.  The Court finds that a reasonable professional in the position of the Defendants might

have expected a claim or suit to result from these acts.  Defendants had ample reason to believe

that the Bel Air plaintiffs would make a claim based on these acts, as they knew that the Bel Air

---

        [3] Because the Court finds that the acts in question here were the acts of the Defendants
themselves, it need not address Plaintiff's contention that even acts, errors, or omissions of
persons other than the insured can trigger the prior knowledge exclusion.

**NOT FOR PUBLICATION**

plaintiffs were extremely dissatisfied with Defendants' conduct with regard the subject property.

Counsel to the Bel Air plaintiffs had made several direct accusations of fraud and threats of

litigation (both oral and written) to Defendants based on these acts. (Pl. Br. 31-32). As noted by

the Third Circuit, when an attorney "has a basis to believe he has breached a professional duty,

he has a reason to foresee that his conduct might be the basis of a professional liability claim

against him. He cannot assume that the claim will not be brought because he *subjectively*

believes it. . . lacks merit." Coregis Ins. Co., 264 F.3d at 307 (emphasis in original). A

reasonable person in Defendants' position – one who was not affected by Defendants' subjective

perceptions regarding the Bel Air plaintiffs and the legitimacy of their complaints – would

certainly have foreseen that Defendants' acts could be the basis of a claim by the Bel Air

plaintiffs, thereby satisfying the objective prong of the test.

      The Court notes Defendants' assertion that "what is indisputable is that in all cases, the

predicate for excluding coverage *is an objective act, error or omission of malpractice known to*

*the insured*." (Def. Opp'n 11 (emphasis in original)). However, this characterization, far from

being "indisputable," misstates the plain language of the exclusion – an exclusion that makes no

mention of "objectivity" or of "malpractice." Exclusion IV(h) excludes coverage if an insured

knew of " any acts, errors, or omissions" and "could have reasonably foreseen that such acts,

errors, or omissions might be expected to be the basis of a Claim" (Compl., Ex. 1 at 6) –

regardless of whether that claim is reasonable or ultimately successful.

      As observed by the Third Circuit:

> No-one, not the insurer and not the insured, knows ahead of time what facts will
> give rise to liability. In order to properly allocate the risk, the policy sensibly puts

NOT FOR PUBLICATION

> the burden on the insured to disclose those facts known only to him, so that the
> costs of the risk can be evaluated with all the relevant information accessible to all
> parties.

Selko, 139 F.3d at 151 (citation omitted).  An insurer cannot properly evaluate the risk of taking

on an insured if it is not aware of the possibility of future claims.  The possibility of these claims

will necessarily impact the price at which the insurer will agree to take on the insured, as an

insurer will incur costs in defending and indemnifying against future claims – even if those

claims are ultimately without merit.  Accordingly, the language of this policy and many other

insurance policies is indifferent to the merits of future claims, and is concerned only with the

possibility or likelihood that such claims will arise.  Defendants' apparent failure to appreciate

this feature of the policy is presumably the reason for their ad hominem characterizations of

Plaintiff and Plaintiff's arguments before this Court.  (Def. Opp'n 2-3 (discussing Plaintiff's

"inexplicable position," its "reckless effort to prevail" in this action, its unjustified reliance on a

"tortured and relentless history of threats and allegations," its "bad faith" in its dealings with this

Court, its "breach [of] duty of candor with this Court," its "novel, if not frivolous, argument" in

this action,  and its "overwhelming bad faith. . . in dealing with its insured.")

Plaintiff's arguments regarding the mixed subjective-objective test are based on

established Third Circuit law.  Using the mixed test articulated in Selko and affirmed in Colliers,

this Court finds that, because defendants had knowledge of acts, errors, or omissions that could

reasonably be expected to form the basis of a claim against them, Exclusion IV(h) operates to

exclude coverage for the claims brought against Defendants in the underlying state court action.

**NOT FOR PUBLICATION**

Finally, the Court finds that the Innocent Insured provision cannot shield Kapusinski or

Scarinci Hollenbeck from Exclusion IV(h).  By its terms, the Innocent Insured provision (Clause

VIII) pertains to noncompliance with "Clause XI Notice of Claim or Circumstance that May

Lead to a Claim," not to the Exclusions found under Clause IV.  While Clause XI addresses

claims made or acts, errors, or omissions that could reasonably be the basis for a claim *during the*

*policy period* (Compl., Ex. 1 at 10-11), Exclusion IV(h) is concerned with acts, errors, or

omissions that took place *"prior to the inception date of the first policy"* and could reasonably be

the basis of a claim (Compl., Ex. 1 at 6 (emphasis added)).  Even assuming that only Glucksman

had knowledge of acts, errors, or omissions that occurred before the inception of the policy and

could reasonably be expected to be the basis of the claim, Kapusinski and Scarinci Hollenbeck

would not be protected by the Innocent Insured provision, as this provision applies only to

claims, acts, errors, or omissions that occurred during the policy period.

**CONCLUSION**

This action presents a live and justiciable controversy because there is money in dispute

between the parties.  Specifically, Plaintiff and Defendants dispute whether, under the policy,

Plaintiff should bear the costs of defending and indemnifying Defendants in the underlying state

court action.  This Court's ruling adjudicates the controversy by determining the monetary

obligations of the parties under the policy.

This Court finds that the acts, errors or omissions that gave rise to the underlying action

against Defendants arose from their rendering or failing to render professional services.  Because

the claims arising from these acts, errors, or omissions arose in the context of professional

-30-

**NOT FOR PUBLICATION**

services, they fall within the scope of the policy's general coverage.  However, because these acts, errors, or omissions were also known to the Defendants before the effective date of the policy and could reasonably have been expected to form the basis of a claim, coverage for these claims is specifically excluded by the policy's prior knowledge exclusion and Plaintiff did not have a duty to defend or indemnify Defendants with respect to the claims raised in the underlying action.  Defendants must reimburse Plaintiff for the costs it expended with regard to the defense and indemnification of Defendants.

It is on this 12th day of May, 2010:

ORDERED that Defendants' motion for summary judgment is DENIED; and

ORDERED that Plaintiff's motion for summary judgment is GRANTED.


**s/ William H. Walls**
United States Senior District Judge